IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IRWIN R. KRAMER,
   *Plaintiff*,

v.                                         Civil Action No. ELH-13-1745

GLENN M. GROSSMAN, *et al.*
   *Defendants*.

**MEMORANDUM OPINION**

Irwin Kramer, plaintiff, a licensed attorney in Maryland, has filed suit against Glenn M. Grossman, in his capacity as Bar Counsel to the Attorney Grievance Commission of Maryland ("Commission"), and the Attorney Grievance Commission of Maryland, claiming that he has a right under the First Amendment to operate a particular website, and seeking a declaration that any disciplinary action against him for doing so is unlawful.

In particular, Kramer operates a website with the domain name "AttorneyGrievance.com." *See* Complaint, ECF 1. He also owns the domain names "AttorneyGrievances.com," "AttorneyGrievanceLaw.com," "GrievanceAttorneys.com," "GrievanceLawyer.com," and "GrievanceLawyers.com," all of which redirect the user to "AttorneyGrievance.com." *See id.* According to plaintiff, he uses the website "to provide helpful information for attorneys faced with grievances, and to raise awareness of legal services designed to assist them." *Id.* ¶ 9. In this suit, plaintiff alleges that defendants claim that the domain name "AttorneyGrievance.com" may mislead the public into believing that the website is connected to the Attorney Grievance Commission of Maryland, and have threatened plaintiff with disciplinary action if he does not cease using the domain name.

Therefore, plaintiff filed suit against defendants under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, seeking a declaratory judgment that defendants violated his rights under the First Amendment to the United States Constitution to continue to use "AttorneyGrievance.com" and the several other similar domain names he owns. Plaintiff also seeks a declaration that any action to punish, sanction, or discipline him for his use of those domain names would be unconstitutional. *Id.*

Contemporaneously with his Complaint, plaintiff filed a Motion for Summary Judgment ("Kramer Motion," ECF 3), and a supporting memorandum ("Kramer Memo," ECF 3-1), in which he claims that "there are no genuine disputes of material fact" and that he is "entitled to a declaratory judgment as a matter of law." Defendants did not file an opposition to the Kramer Motion. Instead, they filed a Motion to Dismiss the Complaint ("Bar Motion," ECF 9), along with a supporting memorandum ("Bar Memo," ECF 9-1). The Bar Memo lodges numerous procedural challenges to plaintiff's Complaint, including that plaintiff lacks Article III standing, that the issue is not ripe for adjudication, that this Court should abstain from deciding the case, and that the suit is barred by sovereign immunity. Plaintiff filed an opposition to the Bar Motion (ECF 10), along with a supporting memorandum ("Pl. Opp.," ECF 10-1). Defendants did not file a reply.

No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons that follow, I will grant the Bar Motion in part and deny it in part. And, I will deny the Kramer Motion, without prejudice.

**Factual Summary**

Irwin R. Kramer is an attorney, licensed in Maryland since 1987, who works at the litigation firm of Kramer & Connolly. Complaint ¶ 6. His practice includes the representation of lawyers who are the subjects of attorney grievance proceedings. *Id.* To advertise his practice, plaintiff maintains a website devoted to this practice area, which is accessible at "AttorneyGrievance.com." *Id.* He also is the registered owner of other Internet domain names: "AttorneyGrievances.com," "AttorneyGrievanceLaw.com," "GrievanceAttorneys.com," "GrievanceLawyer.com," and "GrievanceLawyers.com." *Id.* ¶¶ 6, 9. Since June 2012, plaintiff has placed advertisements for "AttorneyGrievance.com" in the "Lawyer-to-Lawyer" referral section of *The Daily Record*, which is a Maryland-based news publication providing legal and business information. *Id.* ¶ 9; *see* Ex. A to Complaint (ECF 1-1).[1]

Glenn Grossman has served as Bar Counsel to the Commission since July 2010. Complaint ¶ 7. Under Maryland law, Bar Counsel has the power, *inter alia,* to investigate professional misconduct, to issue reprimands, and to prosecute attorneys for alleged violations of the Rules of Professional Conduct. *See* Maryland Rule 16-712(b) (MIKE- Add formal name). *Id.* The Commission consists of twelve members appointed by the Maryland Court of Appeals. Among other things, it appoints Bar Counsel. *See* Maryland Rule 16-711(h); Complaint ¶ 8.

---

[1] In resolving a Rule 12(b)(6) motion, a court may properly consider documents "attached to the complaint." *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

On January 2, 2013, James A. Gaither, Assistant Bar Counsel, sent a letter to Kramer regarding the use of the "AttorneyGrievance.com" domain name. Complaint ¶ 10. In the letter, Gaither stated, Ex. F. to Complaint (ECF 1-6):

> [Y]our firm's use of the domain name "AttorneyGrievance.com" raises additional concerns, which I request that you . . . address. The name appears to be *prima facie* misleading in that it may mislead a potential client into believing that your firm is associated with the Attorney Grievance Commission of Maryland. If you believe otherwise, please indicate so in your response. Please also describe how your firm's use of this domain name does not unjustly increase your website traffic volume at the expense of the Attorney Grievance Commission.

Kramer responded by a letter dated January 8, 2013. *See* Ex. C to Complaint (ECF 1-3). In the letter, Kramer stated: "I do not understand the basis for [the assertion that the domain name is misleading]. . . . I am not aware of any ethical rule precluding domain names describing specific practice areas." *Id.*

In a letter of January 23, 2013, Gaither responded to Kramer, stating: "Our office remains firm on its position concerning your use of the domain name AttorneyGrievance.com. In response to your letter, the basis for the assertion that using this name may be misleading lies in Rule 7.1, Rule 7.2, and Rule 7.5 of the Maryland Lawyers' Rules of Professional Conduct ('MLRPC')." Ex. E to Complaint (ECF 1-5). Kramer further explained: "Per Rule 7.5, a trade name may be used . . . if it does not imply a connection with a government agency or with a public or charitable legal services organization. . . ." "Use of the domain name 'AttorneyGrievance.com' implies a connection with the Attorney Grievance Commission of Maryland." *Id.* According to Gaither, "Rule 7.2 requires the disclosure of the identity of

lawyers advertising their services." *Id.* Further, Gaither said: "Again, your domain name without disclosure of your identity may be misleading, in that "a potential client may misinterpret your website to be either affiliated with the Attorney Grievance Commission or, although just briefly, may misinterpret it to be the official AGC website." *Id.* The letter concluded, *id.*: "[I]t is our position that your use of this domain name violates the MLRPC."

Plaintiff, who disagreed with Bar Counsel's position, provided Bar Counsel with a research memorandum supporting the propriety of his use of the domain name "AttorneyGrievance.com" for a website "designed to help lawyers faced with attorney grievances." *See* Ex. I to Complaint (ECF 1-9). In the cover letter to the memorandum, plaintiff stated: "If you continue to insist on the discontinuance of this domain, I shall sooner take the site down than run the risk of disciplinary action. However, I sincerely hope that, after reviewing the authorities cited, we may work together to resolve any remaining concerns." *Id*.

Mr. Gaither responded with a letter dated February 19, 2013. *See* Ex. J to Complaint (ECF 1-10). He stated, *id.*:

> While I do appreciate your effort in putting forth your response, Bar Counsel maintains its position in this matter. Nevertheless, and in pursuit of fairness in this matter, without having to proceed in federal court, or through the disciplinary process . . . I would like to discuss with you an additional option that may appeal to both sides.

Although a telephone discussion appears to have taken place between Mr. Kramer and Mr. Gaither, the details of that discussion are not clear. However, on May 21, 2013, Mr. Gaither advised Mr. Kramer: "Bar Counsel is not inclined to accept your proposed changes. As a result,

I am constrained to docket this matter unless you make the changes that we discussed in prior correspondence." Ex. K to Complaint, ECF 1-11.

Plaintiff continues to use the disputed domain name. And, he initiated this suit to obtain declaratory relief.

**Standard of Review**

A motion pursuant to Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by the plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 n.3 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

In reviewing such a motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir.), *cert. denied*, ____ U.S. ____, 132 S. Ct. 402 (2011); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385–86 (4th Cir. 2009), *cert. denied*, 559 U.S. 992 (2010). However, a complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of

action," is insufficient. *Twombly*, 550 U.S. at 555. Similarly, the defendant's motion will be granted if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679 (citation omitted). Moreover, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe*, 579 F.3d at 385–86.

"A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy he or she seeks. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, ___ U.S. ___, 132 S. Ct. 1960 (2012). "'Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'" *Hartmann v. Calif. Dept. of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citation omitted); *accord Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Reg. Sys., Inc.*, 680 F.3d 1194, 1201-02 (10th Cir. 2011) ("When reviewing a 12(b)(6) dismissal, 'we must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.' Dismissal is appropriate if the law simply affords no relief.") (internal citation omitted).

A motion asserting failure of the complaint to state a claim typically "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses," *Edwards v.*

*City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted), unless such a defense can be resolved on the basis of the facts alleged in the complaint. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). "This principle only applies, however, if all facts necessary to the affirmative defense '*clearly appear*[ ] *on the face of the complaint*,'" or in other documents that are proper subjects of consideration under Rule 12(b)(6). *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*).

**Discussion**

I. Defendants' Motion to Dismiss

*A. Eleventh Amendment Immunity*

Defendants argue that plaintiff's claims are barred by the Eleventh Amendment to the United States Constitution. Bar Memo at 14. It provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." The Eleventh Amendment, which preserves the sovereign immunity of the states, precludes a private individual from suing an unconsenting state or an "arm of the state" or an instrumentality of state in federal court, absent waiver or a valid Congressional abrogation of sovereign immunity. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United

States.") (internal quotation marks and citation omitted); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101–02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). *See also Regents of the Univ. of Cal. V. Doe,* 519 U.S. 425, 429 (1997); *Bland v. Roberts,* 730 F.3d 368, 389 (4th Cir. 2013). The preeminent purpose of state sovereign immunity is to accord states the dignity that is consistent with their status as sovereign entities. *Fed. Mar. Comm'n v. S. Carolina State Ports Auth.*, 535 U.S. 743, 760 (2002).

However, the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), creates an exception to sovereign immunity that is applicable in suits against individual state officers, for declaratory and injunctive relief, to prevent ongoing violations of federal law. *See generally Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997); *Bland*, 730 F.3d at 390; *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon*, 535 U.S. at 645 (internal quotation marks omitted).[2]

---

[2] Of course, the individual whose conduct is at issue must also qualify as an arm of the state. *Bland*, 730 F.3d at 390. And, a State may wiave its sovereign immunity. *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999).

Plaintiff has sued Glenn M. Grossman in his official capacity as Bar Counsel. However, based on the allegation and an ongoing violation of his rights under the First Amendment,[3] plaintiff seeks only prospective, declaratory relief with respect to Grossman. *See* Complaint. Therefore, plaintiff's claim against Mr. Grossman falls within the exception created by *Ex parte Young*; it is not barred by sovereign immunity.

However, plaintiff's suit against the Commission is barred by sovereign immunity. Defendants contend, and plaintiff does not deny, that the Attorney Grievance Commission is an arm of the state of Maryland. *See Muhammad v. Maryland Court of Appeals*, 2008 WL 398246, at *1 (D. Md. Feb. 8, 2008) (dismissing suit against Attorney Grievance Commission on grounds of sovereign immunity), *aff'd*, 310 F. App'x 561 (4th Cir. 2008) (per curiam). And, although plaintiff seeks only declaratory relief, the *Ex parte Young* exception does not apply in suits against the state or a state entity. *See, e.g.*, *Alabama v. Pugh,* 438 U.S. 781, 781–82 (1978) (per curiam); *see generally* Richard H. Fallon, Jr., *et al., Hart & Wechsler's The Federal Courts and the Federal System* 892 (6th ed. 2009) ("[T]he doctrine and rationale of *Ex parte Young* require plaintiffs to sue state officials, not the state in its own name, in order to avoid the Eleventh Amendment's prohibition."). Thus, plaintiff's claim against the Attorney Grievance

---

[3] Several courts have held that internet domain names may constitute protected speech. *See, e.g.*, *Gibson v. Texas Dep't of Ins.--Div. of Workers' Comp.*, 700 F.3d 227, 236 (5th Cir. 2012); *Taubman Co. v. Webfeats*, 319 F.3d 770, 778 (6th Cir. 2003); *Name.Space, Inc. v. Network Solutions, Inc.*, 202 F.3d 573, 585 (2d Cir. 2000).

Commission is barred by sovereign immunity. Accordingly, I will grant defendants' motion to dismiss the claims against the Attorney Grievance Commission.

## B. *Standing*

Defendants also argue that plaintiff lacks Article III standing to pursue his claims because he has not suffered an "injury in fact." Article III of the United States Constitution "gives federal courts jurisdiction only over cases and controversies, and the doctrine of standing identifies disputes appropriate for judicial resolution." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (internal quotation marks and citations omitted); *see Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. ____, ____, ____ S. Ct. ____, ____ (2011); *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004) (Article III standing "enforces the Constitution's case-or-controversy requirement.").

In order to satisfy the Article III standing requirement, a plaintiff must satisfy three elements, *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted):

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*See also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *Lane v. Holder*, ____ F.3d ____, ____ (4th Cir. 2011); *Cruse v. Judd,* ____ F.3d ____, ____ (4th Cir. 2011); *Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011).

Defendants contend that plaintiff fails to allege an "injury-in-fact" because he "has not changed his expressive behavior" and "the State has not acted to curtail it" by instituting disciplinary proceedings. Bar Memo at 7.

The injury-in-fact requirement is somewhat relaxed in First Amendment cases. *See Secretary of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956 (1984); *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013) ("The leniency of First Amendment standing manifests itself most commonly in the doctrine's first element: injury-in-fact."); *Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010) ("[W]hen a challenged statute risks chilling the exercise of First Amendment rights, the Supreme Court has dispensed with rigid standing requirements." (internal quotation marks and citation omitted)).

When a plaintiff alleges that state action has chilled his speech, he need not "first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson,* 415 U.S. 452, 459, (1974); *see Berry v. Schmitt*, 688 F.3d 290, 296 (6th Cir. 2012). Rather, he may satisfy the injury-in-fact requirement by showing: (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute" and (2) "a credible threat of prosecution thereunder." *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298

(1979); *accord Cooksey*, 721 F.3d at 237.[4] The mere threat of prosecution suffices because such a threat "tends to chill the exercise of First Amendment rights" and leads to self-censorship, which constitutes an injury in and of itself. *N. Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999).

The recent case of *Berry v. Schmitt*, 688 F.3d 290, is instructive. John Berry, an attorney, was issued a written warning by the Kentucky Bar Association for criticizing a quasi-judicial state legislative ethics commission. *Id.* at 294. Berry raised a First Amendment challenge to the Kentucky rule of professional conduct that he was accused of violating, which prohibited a lawyer from making "a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer." *Id.* at 295. The defendant argued that Berry lacked standing to pursue his challenge because he failed to allege an injury-in-fact. The Sixth Circuit rejected defendant's argument, holding that Berry had shown a "credible threat of enforcement" because the warning letter he had received "implied a threat of future enforcement that elevated the injury from subjective chill to actual injury." *Id.* at 297.

Here, Bar Counsel has repeatedly asserted that plaintiff's use of the domain "AttorneyGrievance.com" violates Rule 7.1, Rule 7.2, and Rule 7.5 of the Maryland Lawyers' Rules of Professional Conduct, and has indicated his intention to pursue disciplinary action

---

[4] Although several cases refer to "prosecution" in the criminal sense, the threatened governmental action need not be criminal prosecution in order for plaintiff to satisfy Article III's injury-in-fact requirement. *Cooksey*, 721 F.3d at 238 n.5; *see Berry v. Schmitt*, 688 F.3d 290, 296 (6th Cir. 2012) (holding that threat of disciplinary action by Kentucky Bar Association satisfied injury-in-fact requirement).

against plaintiff. *See, e.g.*, ECF 1-11 ("I am constrained to docket this matter unless you make the changes that we discussed in prior correspondence."). In the context of the First Amendment, this "credible threat of prosecution" satisfies Article III's "injury-in-fact" requirement. Accordingly, defendants' standing argument must be rejected.

*C. Ripeness*

Defendants also contend that plaintiff's claim is not "ripe" for adjudication and therefore must be dismissed. Bar Memo at 7–9. Ripeness "'concerns the appropriate timing of judicial intervention.'" *Cooksey*, 721 F.3d at 240 (quoting *Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 389 (4th Cir. 2001)). The ripeness doctrine, which overlaps with standing, is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (internal quotations omitted). Generally speaking, "a case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) (internal quotation marks omitted). On the other hand, a claim "should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact remains wholly speculative." *Id.* (internal quotation marks omitted).

"Much like standing, ripeness requirements are also relaxed in First Amendment cases." *Cooksey*, 721 F.3d at 240 (citing *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1500 (10th Cir. 1995) ("The primary reasons for relaxing the ripeness analysis in th[e] [First

Amendment] context is the chilling effect that potentially unconstitutional burdens on free speech may occasion.")). Indeed, "First Amendment rights . . . are particularly apt to be found ripe for immediate protection, because of the fear of irretrievable loss." 13B Wright, Miller & Cooper, *Federal Practice and Procedure* § 3532.3 at 159 (3d ed.). Accordingly, a First Amendment claim may be ripe for review even before the government has taken enforcement action.

Although defendants maintain that plaintiff's claim is not ripe for adjudication and cite relevant law on the subject, they do not actually apply the ripeness doctrine to the facts of this case. Instead, they merely assert that "plaintiff cannot meet his burden to show an actual case or controversy because he cannot show that the legal issue . . . is fit for judicial resolution by this Court." Bar Memo at 9. In any event, the only conceivable ripeness issue is the same as that raised in the context of standing—that the Attorney Grievance Commission has not yet imposed discipline on plaintiff.

However, as discussed, a First Amendment claim may ripen before disciplinary proceedings take place, because a credible threat of disciplinary proceedings may have a chilling effect on speech. *See Cooksey*, 721 F.3d at 240 ("Just as they argued Cooksey has not been injured for standing purposes, they also contend Cooksey's claims are not ripe because the State Board has taken no action against Cooksey . . . . We disagree."). Bar Counsel has unequivocally expressed his position that plaintiff's use of the domain "AttorneyGrievance.com" violates the Maryland Rules of Professional Conduct, and he has made clear that he intends to seek

disciplinary action against plaintiff if he does not cease using the domain name. *See* ECF 1-11. Such action could jeopardize Kramer's ability to practice law. Such threats are "likely to deter a person of ordinary firmness from the exercise of First Amendment rights," *Benham*, 635 F.3d at 135, and plaintiff has clearly alleged that they have so deterred him. *See* Compl. ¶¶ 26, 33, 40; *see also* Letter from Plaintiff to Assistant Bar Counsel, ECF 1-9 ("If you continue to insist on the discontinuance of this domain, I shall sooner take the site down than run the risk of disciplinary action.").[5] Accordingly, (see page 17), the legal issue is squarely presented, and the issue of whether plaintiff has a First Amendment right to use the domain "AttorneyGrievance.com" is ripe for review. *Cf. Cooksey*, 721 at 241 ("No further action from the Board is needed: it has already . . . manifested its views that the Act applies to Cooksey's website, and that he was required to change it . . . or face penalties.").

However, plaintiff's requests for declaratory relief with regard to the several other domain names he owns are not ripe for adjudication. Although the other domain names are similar to "AttorneyGrievance.com", plaintiff has not alleged that defendants threatened disciplinary action with regard to them. Therefore, any finding that a "case or controversy" exists as to the other domain names would be based on nothing more than the Court's speculation that defendants would threaten disciplinary action over their continued use.

---

[5] Although plaintiff continues to use the challenged domain name, he has done so only with the consent of defendants, who agreed to "stay the investigation pending a decision" in this case. ECF 10-3.

Accordingly, plaintiff's requests for relief with respect to the related domain names are not ripe for adjudication. As a result, defendants' motion to dismiss will be granted as to those requests, without prejudice to their renewal when they are ripe for adjudication.

*D. Professional Speech Doctrine*

Defendants assert: "Where professional speech is at issue, the government may constitutionally regulate the speech within the context of the State's regulation of a profession." Bar Memo at 9. The "professional speech doctrine" applies when a speaker "is providing personalized advice in a private setting to a paying client . . . ." *Moore-King v. County of Chesterfield*, 708 F.3d 560, 569 (4th Cir. 2013). It is pursuant to this doctrine that a state may, for example, prohibit the unlicensed practice of medicine. *See id.* ("The power of government to regulate the professions is not lost whenever the practice of a profession entails speech." (internal quotation marks and alterations omitted)).

The professional speech doctrine has no application to the present case. Although it appears from the materials attached to the Complaint that plaintiff and defendants disagree about several other issues, all that plaintiff seeks in this Court is a declaration regarding his use of a domain name. Plaintiff does not seek a declaration regarding the content on his website or advice he has given or seeks to give to paying clients. In this respect, the briefing by both sides strays beyond the relevant subject matter: Defendants claim that plaintiff's advertisements and "website materials" support a finding that this case involves "professional speech," Bar Memo at 10, and plaintiff responds that the information on the website "is subject to full First Amendment

Protection." Kramer Memo at 16. But, this case is exceedingly narrow—it relates only to the use of the domain name itself, not the content of the website.

Regardless of how the content of the website is best characterized, plaintiff's use of the domain name "AttorneyGrievance.com" does not constitute "personalized advice in a private setting." Therefore, the professional speech doctrine is inapplicable to this declaratory judgment action.

E. *Rooker-Feldman* Abstention

Defendants fare no better with their argument that the *Rooker-Feldman* doctrine warrants abstention in this case. The *Rooker–Feldman* doctrine is a jurisdictional rule that prohibits a federal district court from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005).[6] In other words, the doctrine forbids claims that seek redress for an injury caused by a state-court decision, because such a claim essentially asks "'the federal district court to conduct an appellate review of the state-court decision.'" *Adkins v. Rumsfeld,* 464 F.3d 456, 464 (4th Cir. 2006) (quoting *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006)).

The doctrine derives from 28 U.S.C. § 1257, a federal statute that vests the United States Supreme Court—and only the United States Supreme Court—with jurisdiction to hear appeals

---

[6] The name of the *Rooker–Feldman* doctrine derives from the two leading Supreme Court cases in which it has been articulated and applied: *D.C. Court of Appeals v. Feldman,* 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923).

from state court decisions in cases raising questions of federal law. *See Adkins*, 464 F.3d at 463–64. The *Rooker–Feldman* doctrine precludes "lower federal courts . . . from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006).

Although defendants are correct that "the *Rooker-Feldman* doctrine regularly has been applied to bar claims brought in federal court . . . that seek to attack the decisions of state courts . . . disciplining or disbarring an attorney," Bar Memo at 12, the issues in the present case have not been the subject of any prior state court adjudication. As discussed, defendants have threatened plaintiff with disciplinary proceedings, but have not instituted such proceedings within the Attorney Grievance Commission or in the state court system. Indeed, defendants' standing and ripeness arguments, discussed *supra*, are premised on the fact that formal proceedings have not yet commenced. In short, there is no basis for applying the *Rooker-Feldman* doctrine to this case.

## II. Plaintiff's Motion for Summary Judgment

The Kramer Motion, which was filed with plaintiff's Complaint, seeks summary judgment on plaintiff's claim that the First Amendment protects his right to use the domain "AttorneyGrievance.com" and prohibits defendants from taking any disciplinary action against him for his continued use of the domain name. I will deny the Kramer Motion as premature.

As noted, defendants did not file a response in opposition to the Kramer Motion, instead filing a motion to dismiss the Complaint. Although it perhaps was unwise for defendants not to respond in any way to the Kramer Motion, it would also have been understandable if they simply

assumed that the Court would address the threshold issues presented by their motion to dismiss before requiring full briefing on the Kramer Motion.

Moreover, I believe that further factual development would be beneficial. The key question raised by the Kramer Motion is whether plaintiff's use of the domain name "AttorneyGrievance.com" is misleading or deceptive. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.,* 447 U.S. 557, 561 (1980). In their previous correspondence with plaintiff, defendants suggested that the domain name might mislead the public into believing that the website is affiliated with the Attorney Grievance Commission. *See, e.g.*, ECF 1-6. An inquiry into whether the domain name is misleading would be helped by the submission of evidence showing that members of the public have (or have not) been misled. *Cf. Syndicated Publications, Inc. v. Montgomery Cnty., Md.*, 921 F. Supp. 1442, 1451 (D. Md. 1996) (finding that solicitations were misleading because, *inter alia*, recipients had filed complaints with the local office of consumer affairs expressing their confusion). Accordingly, I will deny the Kramer Motion, without prejudice to its renewal after the parties conduct discovery.

## CONCLUSION

For the foregoing reasons, the Bar Motion will be granted, in part and denied, in part. The Kramer Motion will be denied, without prejudice. A separate Order follows, consistent with this Memorandum Opinion.

Date: March 5, 2014  /s/
Ellen Lipton Hollander
United States District Judge