IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IRWIN R. KRAMER,

    *Plaintiff*,

    v.

GLENN M. GROSSMAN, *et al.*
    *Defendants*.

Civil Action No. ELH-13-1745

## MEMORANDUM OPINION

Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, Irwin R. Kramer, plaintiff, a licensed attorney in Maryland, has filed suit against the Attorney Grievance Commission of Maryland ("Commission") and Glenn M. Grossman, in his capacity as Bar Counsel to the Commission. Kramer seeks a declaration that he has a right under the First Amendment to the United States Constitution to use certain domain names for his website. Plaintiff also seeks a declaration that any action to punish, sanction, or otherwise discipline him for his use of those domain names would be unconstitutional. *Id.*

In particular, Kramer operates a website with the domain name "AttorneyGrievance.com." *See* Complaint, ECF 1. He also owns the domain names "AttorneyGrievances.com," "AttorneyGrievanceLaw.com," "GrievanceAttorneys.com," "GrievanceLawyer.com," and "GrievanceLawyers.com," all of which redirect the user to "AttorneyGrievance.com." *See id.* According to plaintiff, he uses the website "to provide helpful information for attorneys faced with grievances, and to raise awareness of legal services designed to assist them." *Id.* ¶ 9. Defendants claim the domain name "AttorneyGrievance.com" may mislead the public into believing that the website is connected to the Commission, in

violation of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC"). According to plaintiff, defendants have threatened plaintiff with disciplinary action if he continues to use the domain names.

The Complaint includes three counts, and numerous exhibits were attached to the suit. Count I includes requests for (1) "a judgment declaring Plaintiff's First Amendment right to use the domain 'AttorneyGrievance.com' for a website involving the attorney grievance and disciplinary process"; (2) "a judgment declaring as unconstitutional any action to punish, to sanction or to discipline Plaintiff for using the domain 'AttorneyGrievance.com'"; (3) "a judgment declaring Plaintiff's First Amendment right to use the phrase "attorney grievance' to describe and to identify a website involving the attorney grievance and disciplinary process"; (4) "a judgment declaring as unconstitutional any action to punish, to sanction or to discipline Plaintiff for using the phrase 'attorney grievance' to describe and to identify a website involving the attorney grievance and disciplinary process." *Id.* ¶ 26. Count II requests the same declarations as to the domain "AttorneyGrievances.com" and the phrase "attorney grievances." *Id.* ¶ 33. Count III requests the same declarations as to the domains "AttorneyGrievanceLaw.com," "GrievanceAttorneys.com," "GrievanceLawyer.com," and "GrievanceLawyers.com." *Id.* ¶ 40. Notably, plaintiff's requests for relief relate only to the domain names themselves, and not to the actual content of the websites he owns and operates.

Along with his Complaint, plaintiff filed a Motion for Summary Judgment ("Kramer Motion," ECF 3), and a supporting memorandum ("Kramer Memo," ECF 3-1), in which he claims that "there are no genuine disputes of material fact" and that he is "entitled to a declaratory judgment as a matter of law." Defendants did not file an opposition to the Kramer

Motion. Instead, they filed a Motion to Dismiss the Complaint ("Bar Motion," ECF 9), along with a supporting memorandum ("Bar Memo," ECF 9-1). The Bar Motion lodges numerous procedural challenges to plaintiff's Complaint, including that plaintiff lacks Article III standing, that the issue is not ripe for adjudication, that this Court should abstain from deciding the case, and that the suit is barred by sovereign immunity. Plaintiff filed an opposition to the Bar Motion (ECF 10), along with a supporting memorandum ("Pl. Opp.," ECF 10-1). Defendants did not file a reply.

No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons that follow, I will grant the Bar Motion in part and deny it in part. And, I will deny the Kramer Motion, without prejudice.

## Factual Summary

Kramer was admitted to the Maryland Bar in 1987. He works at the law firm of Kramer & Connolly. Complaint ¶ 6. His practice includes the representation of lawyers who are the subjects of attorney grievance proceedings. *Id.* To advertise his practice, plaintiff maintains a website devoted to this practice area, which is accessible at "AttorneyGrievance.com." *Id.* He also is the registered owner of other domain names: "AttorneyGrievances.com," "AttorneyGrievanceLaw.com," "GrievanceAttorneys.com," "GrievanceLawyer.com," and "GrievanceLawyers.com." *Id.* ¶¶ 6, 9. Since June 2012, plaintiff has placed advertisements for "AttorneyGrievance.com" in the "Lawyer-to-Lawyer" referral section of *The Daily Record*,

which is a Maryland-based news publication providing legal and business information. *Id.* ¶ 9; *see* Ex. A to Complaint (ECF 1-1).[1]

Grossman has served as Bar Counsel to the Commission since July 2010. Complaint ¶ 7. Under Maryland law, Bar Counsel has the power, *inter alia,* to investigate professional misconduct, to issue reprimands, and to prosecute attorneys for alleged violations of the Maryland Lawyer's Rules of Professional Conduct. *See* Md. Rule 16-712(b).[2] *Id.* The Commission consists of twelve members appointed by the Maryland Court of Appeals. Among other things, it appoints Bar Counsel, subject to approval by the Court of Appeals. *See* Md. Rule 16-711(h);[3] Complaint ¶ 8.

On January 2, 2013, James A. Gaither, Assistant Bar Counsel, sent a letter to Kramer regarding the use of the "AttorneyGrievance.com" domain name. Complaint ¶ 10. In the letter, Gaither stated, Ex. F. to Complaint (ECF 1-6):

> [Y]our firm's use of the domain name "AttorneyGrievance.com" raises additional concerns, which I request that you . . . address. The name appears to be *prima facie* misleading in that it may mislead a potential client into believing that your firm is associated with the Attorney Grievance Commission of Maryland. If you believe otherwise, please indicate so in your response. Please also describe how your firm's use of this domain name does not unjustly increase your website traffic volume at the expense of the Attorney Grievance Commission.

Kramer responded by letter dated January 8, 2013. *See* Ex. C to Complaint (ECF 1-3). He stated: "I do not understand the basis for [the assertion that the domain name is

---

[1] In resolving a Rule 12(b)(6) motion, a court may properly consider documents "attached to the complaint." *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[2] Title 16 of the Maryland Rules of Practice and Procedure (the "Maryland Rules") is captioned "Courts, Judges, and Attorneys." Rule 16-712(b) is titled "Bar Counsel."

[3] Rule 16-711(h) is captioned "Attorney Grievance Commission."

misleading]. . . . I am not aware of any ethical rule precluding domain names describing specific practice areas." *Id.*

In a letter of January 23, 2013, Gaither wrote to Kramer, stating: "Our office remains firm on its position concerning your use of the domain name AttorneyGrievance.com. In response to your letter, the basis for the assertion that using this name may be misleading lies in Rule 7.1, Rule 7.2, and Rule 7.5 of the Maryland Lawyers' Rules of Professional Conduct ('MLRPC')."[4] Ex. E to Complaint (ECF 1-5). Further, Gaither explained: "Per Rule 7.5, a trade name may be used . . . if it does not imply a connection with a government agency or with a public or charitable legal services organization. . . . Use of the domain name 'AttorneyGrievance.com' implies a connection with the Attorney Grievance Commission of Maryland." *Id.* According to Gaither, "Rule 7.2 requires the disclosure of the identity of lawyers advertising their services." *Id.* Gaither also said: "Again, your domain name, without disclosure of your identity, may be misleading in that a potential client may misinterpret your website to be either affiliated with the Attorney Grievance Commission or, although just briefly, may misinterpret it to be the official AGC website." *Id.* The letter concluded, *id.*: "[I]t is our position that your use of this domain name violates the MLRPC."

Plaintiff disagreed with Bar Counsel's position and provided Bar Counsel with a research memorandum supporting the propriety of his use of the domain name "AttorneyGrievance.com"

---

[4] Rule 7.1 states: "A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services."

Rule 7.2 governs advertising by lawyers. It states, in relevant part: "Any communication made pursuant to this Rule shall include the name of at least one lawyer responsible for its content."

Rule 7.5 states, in relevant part: "A trade name may be used by a lawyer in private practice if it does not imply a connection with a government agency."

for a website "designed to help lawyers faced with attorney grievances." *See* Ex. I to Complaint (ECF 1-9). In the cover letter to the memorandum, dated February 19, 2013, plaintiff stated: "If you continue to insist on the discontinuance of this domain, I shall sooner take the site down than run the risk of disciplinary action. However, I sincerely hope that, after reviewing the authorities cited, we may work together to resolve any remaining concerns." *Id*.

Mr. Gaither replied in a letter dated February 19, 2013. *See* Ex. J to Complaint (ECF 1-10). He stated, *id.*:

> While I do appreciate your effort in putting forth your response, Bar Counsel maintains its position in this matter. Nevertheless, and in pursuit of fairness in this matter, without having to proceed in federal court, or through the disciplinary process . . . I would like to discuss with you an additional option that may appeal to both sides.

Although a telephone discussion appears to have taken place between Mr. Kramer and Mr. Gaither, the details of that discussion are not clear. However, on May 21, 2013, Mr. Gaither advised Mr. Kramer: "Bar Counsel is not inclined to accept your proposed changes. As a result, I am constrained to docket this matter unless you make the changes that we discussed in prior correspondence." Ex. K to Complaint, ECF 1-11.

Plaintiff continues to use the disputed domain name, but he has done so only with the consent of defendants, who agreed to "stay the investigation pending a decision" in this case. ECF 10-3. Plaintiff initiated this suit to obtain the declaratory relief described earlier.[5]

### Standard of Review

*A. Motion to Dismiss*

_____

[5] It appears from the exhibits attached to the Complaint that the parties also disagree about propriety of the content of Kramer's website and the content of Kramer's advertisements in the *Daily Record*. However, those disputes are not the subject of plaintiff's Complaint, and I take no position on them.

A motion pursuant to Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by the plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 n.3 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

In reviewing such a motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir.), *cert. denied*, ____ U.S. ____, 132 S. Ct. 402 (2011); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385–86 (4th Cir. 2009), *cert. denied*, 559 U.S. 992 (2010). However, a complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient. *Twombly*, 550 U.S. at 555. Similarly, the defendant's motion will be granted if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679 (citation omitted). Moreover, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe*, 579 F.3d at 385–86.

"A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and

then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy he or she seeks. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, ___ U.S. ___, 132 S. Ct. 1960 (2012). "'Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'" *Hartmann v. Calif. Dept. of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citation omitted); *accord Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Reg. Sys., Inc.*, 680 F.3d 1194, 1201-02 (10th Cir. 2011) ("When reviewing a 12(b)(6) dismissal, 'we must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.' Dismissal is appropriate if the law simply affords no relief.") (internal citation omitted).

A motion asserting failure of the complaint to state a claim typically "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses," *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted), unless such a defense can be resolved on the basis of the facts alleged in the complaint. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). "This principle only applies, however, if all facts necessary to the affirmative defense '*clearly appear*[ ] *on the face of the complaint*,'" or in other documents that are proper subjects of consideration under Rule 12(b)(6). *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*).

In resolving a Rule 12(b)(6) motion, the court may properly consider documents "attached or incorporated into the complaint," as well as documents attached to the defense

motion, "so long as they are integral to the complaint and authentic." *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also E.I. du Pont de Nemours & Co.*, 637 F.3d at 448. As noted, plaintiff attached several exhibits to his Complaint; I will consider those exhibits in resolving the motions.

### B.  Motion for Summary Judgment

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. It provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In response to a motion for summary judgment, the non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U. S. at 247–48 (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts'" showing that there is a triable issue. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514,

522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004).

In resolving a summary judgment motion, the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The "judge's function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," there is a dispute of material fact that precludes summary judgment. *Id.* at 248.

## Discussion

### I.  Defendants' Motion to Dismiss

#### A.  *Eleventh Amendment Immunity*

Defendants argue that plaintiff's claims are barred by the Eleventh Amendment to the United States Constitution. Bar Memo at 14. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." The Eleventh Amendment did not *create* sovereign immunity; rather, it *preserved* the sovereign immunity that the states enjoyed prior to the formation of the Union. *See Alden v. Maine*, 527 U.S. 706, 724 (1999); *see also Sossamon v. Texas*, ___ U.S. ___, 131 S. Ct. 1651, 1657–58 (2011). For this reason, states enjoy sovereign immunity from private suits brought by their *own* citizens, even though the text of the Eleventh

Amendment does not explicitly address such a scenario. *See Hans v. Louisiana*, 134 U.S. 1, 3 (1890)

Sovereign immunity precludes a private individual from suing an unconsenting state or an instrumentality of a state (also referred to as an "arm of the state") in federal court, absent waiver or a valid Congressional abrogation of sovereign immunity. *See Coleman v. Court of Appeals of Maryland*, ___ U.S. ___, 132 S. Ct. 1327, 1333 (2012) ("A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense."); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States." (internal quotation marks and citation omitted)); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101–02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *see also Bland v. Roberts,* 730 F.3d 368, 389 (4th Cir. 2013). The preeminent purpose of state sovereign immunity is to accord states the dignity that is consistent with their status as sovereign entities. *Fed. Mar. Comm'n v. S. Carolina State Ports Auth.*, 535 U.S. 743, 760 (2002).

However, the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), creates an exception to sovereign immunity that is applicable in suits for declaratory and injunctive relief against individual state officers, in order to prevent ongoing violations of federal law. *See generally Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997); *Bland*, 730 F.3d at 390; *McBurney v.*

*Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon*, 535 U.S. at 645 (internal quotation marks omitted).[6]

Plaintiff has sued Grossman in his official capacity as Bar Counsel. However, based on plaintiff's allegation of an ongoing violation of his rights under the First Amendment,[7] plaintiff seeks only prospective, declaratory relief with respect to Grossman. *See* Complaint. Therefore, plaintiff's claim against Grossman falls within the exception created by *Ex parte Young*; it is not barred by sovereign immunity.

In contrast, plaintiff's suit against the Commission is barred by sovereign immunity. Defendants contend, and plaintiff does not deny, that the Attorney Grievance Commission is an arm of the state of Maryland. *See Muhammad v. Maryland Court of Appeals*, 2008 WL 398246, at *1 (D. Md. Feb. 8, 2008) (dismissing suit against Attorney Grievance Commission on grounds of sovereign immunity), *aff'd*, 310 F. App'x 561 (4th Cir. 2008) (per curiam). And, although plaintiff seeks only declaratory relief, the *Ex parte Young* exception does not apply in suits against the state or a state entity. *See, e.g.*, *Alabama v. Pugh,* 438 U.S. 781, 781–82 (1978) (per

---

[6] Of course, the individual whose conduct is at issue must also qualify as an arm of the state. *Bland*, 730 F.3d at 390. And, a state may waive its sovereign immunity. *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999).

[7] Several courts have held that internet domain names may constitute protected speech. *See, e.g.*, *Gibson v. Texas Dep't of Ins.--Div. of Workers' Comp.*, 700 F.3d 227, 236 (5th Cir. 2012); *Taubman Co. v. Webfeats*, 319 F.3d 770, 778 (6th Cir. 2003); *Name.Space, Inc. v. Network Solutions, Inc.*, 202 F.3d 573, 585 (2d Cir. 2000).

curiam); *see generally* Richard H. Fallon, Jr., *et al., Hart & Wechsler's The Federal Courts and the Federal System* 892 (6th ed. 2009) ("[T]he doctrine and rationale of *Ex parte Young* require plaintiffs to sue state officials, not the state in its own name, in order to avoid the Eleventh Amendment's prohibition.").

Because plaintiff's claim against the Commission is barred by sovereign immunity, I will grant defendants' motion to dismiss all three Counts as against the Commission.

## B. Standing

Defendants argue that plaintiff lacks Article III standing to pursue his claims because he has not suffered an "injury in fact." Article III of the United States Constitution "gives federal courts jurisdiction only over cases and controversies, and the doctrine of standing identifies disputes appropriate for judicial resolution." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (internal quotation marks and citations omitted); *see Arizona Christian Sch. Tuition Org. v. Winn*, ___ U.S. ____, 131 S. Ct. 1436, 1442 (2011) ("Continued adherence to the case-or-controversy requirement of Article III maintains the public's confidence in an unelected but restrained Federal Judiciary."); *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004) (Article III standing "enforces the Constitution's case-or-controversy requirement.").

In order to satisfy the Article III standing requirement, a plaintiff must satisfy three elements. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted). They are, *id.*:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be

likely, as opposed to merely speculative, that the injury will be redressed by a
favorable decision.

*See also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81

(2000); *Lane v. Holder*, 703 F.3d 668, 671 (4th Cir. 2011); *Lux v. Judd*, 651 F.3d 396, 400 (4th

Cir. 2011); *Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011).

Defendants contend that plaintiff fails to allege an "injury-in-fact" because he "has not

changed his expressive behavior" and "the State has not acted to curtail it" by instituting

disciplinary proceedings.  Bar Memo at 7.  I disagree.

The injury-in-fact requirement is somewhat relaxed in First Amendment cases.  *See*

*Secretary of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956 (1984); *Cooksey v.*

*Futrell*, 721 F.3d 226, 235 (4th Cir. 2013) ("The leniency of First Amendment standing

manifests itself most commonly in the doctrine's first element: injury-in-fact."); *Human Life of*

*Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010) ("[W]hen a challenged statute risks

chilling the exercise of First Amendment rights, the Supreme Court has dispensed with rigid

standing requirements." (internal quotation marks and citation omitted)).

When a plaintiff alleges that state action has chilled his speech, he need not "first expose

himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters

the exercise of his constitutional rights."  *Steffel v. Thompson,* 415 U.S. 452, 459, (1974); *see*

*Berry v. Schmitt*, 688 F.3d 290, 296 (6th Cir. 2012).  Rather, he may satisfy the injury-in-fact

requirement by showing: (1) "an intention to engage in a course of conduct arguably affected

with a constitutional interest, but proscribed by a statute" and (2) "a credible threat of

prosecution thereunder."  *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298

(1979); *accord Cooksey*, 721 F.3d at 237.  The mere threat of prosecution suffices because such

a threat "tends to chill the exercise of First Amendment rights" and leads to self-censorship, which constitutes an injury in and of itself. *N. Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999). But, the threatened governmental action need not be a criminal prosecution in order for plaintiff to satisfy Article III's injury-in-fact requirement. *Cooksey*, 721 F.3d at 238 n.5; *see Berry v. Schmitt*, 688 F.3d 290, 296 (6th Cir. 2012) (holding that threat of disciplinary action by Kentucky Bar Association satisfied injury-in-fact requirement).

The case of *Berry v. Schmitt*, 688 F.3d 290, is instructive. John Berry, an attorney, received a written warning from the Kentucky Bar Association for criticizing a quasi-judicial state legislative ethics commission. *Id.* at 294. Berry raised a First Amendment challenge to the Kentucky rule of professional conduct that he was accused of violating, which prohibited a lawyer from making "a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer." *Id.* at 295. Defendant, the Chair of the Kentucky Bar Association Inquiry Commission, argued that Berry lacked standing to pursue his challenge because he failed to allege an injury-in-fact. The Sixth Circuit rejected defendant's argument, holding that Berry had shown a "credible threat of enforcement" because the warning letter he had received "implied a threat of future enforcement that elevated the injury from subjective chill to actual injury." *Id.* at 297.

Here, Bar Counsel has repeatedly asserted that plaintiff's use of the domain "AttorneyGrievance.com" violates Rule 7.1, Rule 7.2, and Rule 7.5 of the Maryland Lawyers' Rules of Professional Conduct, and has indicated his intention to pursue disciplinary action against plaintiff. *See, e.g.*, ECF 1-11 ("I am constrained to docket this matter unless you make

the changes that we discussed in prior correspondence."). In the context of the First Amendment, this "credible threat of prosecution" satisfies Article III's "injury-in-fact" requirement. Accordingly, defendants' standing argument must be rejected.

## C. Ripeness

In a related argument, defendants contend that plaintiff's claim is not "ripe" for adjudication and therefore must be dismissed. Bar Memo at 7–9. Ripeness "'concerns the appropriate timing of judicial intervention.'" *Cooksey*, 721 F.3d at 240 (quoting *Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 389 (4th Cir. 2001)). The ripeness doctrine, which overlaps with standing, is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (internal quotations omitted). Generally speaking, "a case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) (internal quotation marks omitted). On the other hand, a claim "should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact remains wholly speculative." *Id.* (internal quotation marks omitted).

"Much like standing, ripeness requirements are also relaxed in First Amendment cases." *Cooksey*, 721 F.3d at 240 (citing *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1500 (10th Cir. 1995) ("The primary reasons for relaxing the ripeness analysis in th[e] [First Amendment] context is the chilling effect that potentially unconstitutional burdens on free speech may occasion.")). Indeed, "First Amendment rights . . . are particularly apt to be found ripe for immediate protection, because of the fear of irretrievable loss." 13B Wright, Miller &

Cooper, *Federal Practice and Procedure* § 3532.3 at 159 (3d ed.). Accordingly, a First Amendment claim may be ripe for review even before the government has taken enforcement action.

Although defendants maintain that plaintiff's claim is not ripe for adjudication and cite relevant law on the subject, they do not actually apply the ripeness doctrine to the facts of this case. Instead, they merely assert that "plaintiff cannot meet his burden to show an actual case or controversy because he cannot show that the legal issue . . . is fit for judicial resolution by this Court." Bar Memo at 9. In any event, the only conceivable ripeness issue is the same as that raised in the context of standing—that the Attorney Grievance Commission has not yet imposed discipline on plaintiff.

However, as discussed, a First Amendment claim may ripen before disciplinary proceedings take place, because a credible threat of disciplinary proceedings may have a chilling effect on speech. *See Cooksey*, 721 F.3d at 240 ("Just as they argued Cooksey has not been injured for standing purposes, they also contend Cooksey's claims are not ripe because the State Board has taken no action against Cooksey . . . . We disagree."). Bar Counsel has unequivocally expressed his position that plaintiff's use of the domain "AttorneyGrievance.com" violates the Maryland Rules of Professional Conduct, and he has made clear that he intends to seek disciplinary action against plaintiff if he does not cease using the domain name. *See* ECF 1-11. Such action could jeopardize Kramer's ability to practice law, *i.e.,* his livelihood. Thus, the threats are "likely to deter a person of ordinary firmness from the exercise of First Amendment rights," *Benham*, 635 F.3d at 135, and plaintiff has clearly alleged that they have so deterred him. *See* Compl. ¶¶ 26, 33, 40; *see also* Letter from Plaintiff to Assistant Bar Counsel, ECF 1-9 ("If

you continue to insist on the discontinuance of this domain, I shall sooner take the site down than run the risk of disciplinary action.").

Moreover, plaintiff alleged that he proposed to change the domain name of the website to the plural "AttorneyGrievances.com."  Complaint ¶ 29.  However, Bar Counsel "rejected the proposal to use this phrase as a means of avoiding disciplinary action." *Id.* ¶ 30.  Thus, plaintiff has alleged that Bar Counsel has also threatened disciplinary action for the use of "AttorneyGrievances.com."

Accordingly, the legal issue as to these two domains is squarely presented by the events that have already occurred.  Therefore, the issues in Count I and II of whether plaintiff has a First Amendment right to use the domain "AttorneyGrievance.com" and "AttorneyGrievances.com" are ripe for review.  *Cf. Cooksey*, 721 at 241 ("No further action from the Board is needed: it has already . . . manifested its views that the Act applies to Cooksey's website, and that he was required to change it . . . or face penalties.").

However, plaintiff's requests for declaratory relief in Count III with regard to the several other domain names he owns are not ripe for adjudication.  Although the other domain names are similar to "AttorneyGrievance.com" and "AttorneyGrievances.com," plaintiff has not alleged that defendants threatened disciplinary action with regard to them.  Therefore, any finding that a "case or controversy" exists as to these other domain names would be based on nothing more than the Court's speculation that defendants would threaten disciplinary action over their continued use.   Accordingly, plaintiff's requests for relief with respect to the related domain names are not ripe for adjudication.

In sum, the motion to dismiss will be denied as to Counts I and II, but it will be granted as to Count III, without prejudice to renewal of the motion when the issues presented in Count III are ripe for adjudication.

### D. Professional Speech Doctrine

Defendants assert: "Where professional speech is at issue, the government may constitutionally regulate the speech within the context of the State's regulation of a profession." Bar Memo at 9. On this basis, they seek dismissal.

The "professional speech doctrine" aims to reconcile the "collision between the power of government to license and regulate those who would pursue a profession . . . and the rights of freedom of speech." *Lowe v. S.E.C.*, 472 U.S. 181, 228 (1985) (White, J., concurring). Pursuant to the "professional speech doctrine," the state may regulate speech when the speaker "is providing personalized advice in a private setting to a paying client . . . ." *Moore-King v. County of Chesterfield*, 708 F.3d 560, 569 (4th Cir. 2013). For example, a state may prohibit the unlicensed practice of medicine. *See id.* ("Under the professional speech doctrine, the government can license and regulate those who would provide services to their clients for compensation without running afoul of the First Amendment."). On the other hand, because of the First Amendment's protections, the state may not "'make it a crime publicly or privately to speak urging persons to follow or reject any school of medical thought.'" *Moore-King*, 708 F.3d at 569 (quoting *Thomas v. Collins*, 323 U.S. 516, 545 (1945) (Jackson, J., concurring)).

The professional speech doctrine has no application to the present case. Although it appears from the materials attached to the Complaint that plaintiff and defendants disagree about several issues, all that plaintiff seeks in this Court is a declaration regarding his use of a domain

name.  In this respect, the briefing by both sides strays beyond the relevant subject matter: Defendants claim that plaintiff's advertisements and "website materials" support a finding that this case involves "professional speech," Bar Memo at 10, and plaintiff responds that the information on the website "is subject to full First Amendment Protection."  Kramer Memo at 16.  But, plaintiff does not seek a declaration regarding the content on his website or advice he has given or seeks to give to paying clients.  To the contrary, this case is exceedingly narrow—it relates only to the use of the domain name itself, not the content of the website.

Regardless of how the content of the website is best characterized, plaintiff's use of the domain name "AttorneyGrievance.com" does not constitute "personalized advice in a private setting."  Therefore, the professional speech doctrine is inapplicable here.

### E.  *Rooker-Feldman* Abstention

Defendants fare no better with their argument that the *Rooker-Feldman* doctrine warrants abstention in this case.  The *Rooker–Feldman* doctrine is a jurisdictional rule that prohibits a federal district court from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005).[8]  In other words, the doctrine forbids claims that seek redress for an injury caused by a state-court decision, because such a claim essentially asks "'the federal district court to conduct an appellate review of the state-court decision.'" *Adkins v.*

---

[8] The name of the *Rooker–Feldman* doctrine derives from the two leading Supreme Court cases in which it has been articulated and applied: *D.C. Court of Appeals v. Feldman,* 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923).

*Rumsfeld,* 464 F.3d 456, 464 (4th Cir. 2006) (quoting *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006)).

The doctrine derives from 28 U.S.C. § 1257, a federal statute that vests the United States Supreme Court—and only the United States Supreme Court—with jurisdiction to hear appeals from state court decisions in cases raising questions of federal law. *See Adkins*, 464 F.3d at 463–64. The *Rooker–Feldman* doctrine precludes "lower federal courts . . . from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006).

To be sure, the Maryland Court of Appeals has "original and complete jurisdiction over all attorney disciplinary matters arising from the conduct of a member of the Maryland State Bar." *Attorney Grievance Commission v. Pak*, 400 Md. 567, 599-600, 929 A.2d 546, 565 (2007); *see Feldman*, 460 U.S. at 484 n.16 (noting strength of state interest in regulating state bar). According to defendants, "this Court's exercise of jurisdiction over bar disciplinary matters would impermissibly intrude upon the exclusive jurisdiction of the Maryland Court of Appeals." ECF 9-1 at 14. In their view, the *Rooker-Feldman* doctrine serves to preclude this Court from interfering with the Maryland Court of Appeals's ability to "fully exercise[e] its constitutional prerogative to regulate the Maryland Bar in such a manner that attorney communications on the Internet are not misleading." *Id.*

In support of their argument, defendants cite several cases in which federal courts have abstained from considering claims "that seek to attack the decisions of state courts . . . disciplining or disbarring an attorney." Bar Memo at 12 (citing *Czura v. Supreme Ct. of S. Carolina,* 813 F.2d 644, 646 (4th Cir. 1987); *Johnson v. Supreme Ct. of Illinois*, 165 F.3d 1140, 1141 (7th Cir. 1999); *Levin v. Attorney Registration & Disciplinary Comm'n*, 74 F.3d 763, 767

(7th Cir. 1996); *Musslewhite v. State Bar of Texas*, 32 F.3d 942, 947 (5th Cir. 1994); *Stern v. Nix*, 840 F.2d 208, 212 (3d Cir. 1988); *Razatos v. Colorado Sup. Ct.*, 746 F.2d 1429, 1432 (10th Cir. 1984)).   However, in each of those cases, plaintiffs were seeking to challenge a state-court decision or formal disciplinary proceedings brought by a state bar association.   In the present case, the issues have not been the subject of any prior state court adjudication.   As discussed, defendants have threatened plaintiff with disciplinary proceedings, but have not instituted such proceedings.   Indeed, defendants' standing and ripeness arguments, discussed *supra*, are premised on the fact that formal proceedings have not yet commenced.   Thus, the cases relied upon by defendants are inapposite.

Deciding the issues presented by plaintiff's complaint does not force me to reconsider or review any state-court decision or the result of any state disciplinary proceedings.   And, the mere fact that this case involves a dispute over state bar rules does not place it outside of the jurisdiction of the federal courts. See *Feldman*, 460 U.S. at 486 ("United States District Courts, therefore, have subject matter jurisdiction over general challenges to state bar rules, promulgated by state courts in non-judicial proceedings, which do not require review of a final state court judgment in a particular case."); *Harrell v. Florida Bar*, 915 F. Supp. 2d 1285, 1292 (M.D. Fla. 2011) (ruling that particular Florida state bar rules "are unconstitutionally vague on their face" and that application of another Florida state bar rule to plaintiff would "impermissibly restrict [his] First Amendment rights."); *Bell v. Legal Adver. Comm.*, 998 F. Supp. 1231, 1235 (D.N.M. 1998) (noting that the *Rooker-Feldman* doctrine was not implicated in plaintiff's First Amendment challenge to state agency's determination that plaintiff's advertisement violated the agency's rules because "there has been no judicial decision concerning the advertisements.");

*Texans Against Censorship, Inc. v. State Bar of Texas*, 888 F. Supp. 1328, 1343 (E.D. Tex. 1995) (addressing and rejecting on the merits plaintiff's First Amendment challenge to State Bar of Texas's advertising rules), *aff'd*, 100 F.3d 953 (5th Cir. 1996).

Accordingly, the *Rooker-Feldman* abstention doctrine is inapplicable. It follows that this Court has jurisdiction to address the merits of plaintiff's claim under the First Amendment.

## II. Plaintiff's Motion for Summary Judgment

The Kramer Motion, which was filed with plaintiff's Complaint, seeks summary judgment on plaintiff's claim that the First Amendment, incorporated against the states through the Fourteenth Amendment, protects his right to use the domain "AttorneyGrievance.com" and prohibits defendants from taking any disciplinary action against him for his continued use of the domain name. I will deny the Kramer Motion as premature.

As noted, defendants did not file a response in opposition to the Kramer Motion, instead filing a motion to dismiss the Complaint. Although it perhaps was unwise for defendants not to respond in any way to the Kramer Motion, they may have assumed that the Court would address the threshold issues presented by their motion to dismiss before requiring full briefing on the Kramer Motion.

Moreover, I believe that further development of the record would be beneficial. The Kramer Motion seeks, *inter alia*, a declaration that the First Amendment protects Kramer's right to use the domain name "AttorneyGrievance.com." The Kramer Memo assumes, *arguendo*, that the domain name constitutes "commercial speech" for purposes of First Amendment analysis,[9] and to "qualify for First Amendment protection, commercial speech must . . . not be misleading."

_____

[9] The commercial speech doctrine is unrelated to the "professional speech" doctrine, discussed earlier.

*Educ. Media Co. at Virginia Tech, Inc. v. Swecker*, 602 F.3d 583, 589 (4th Cir. 2010); *see Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.,* 447 U.S. 557, 561 (1980); *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013). Thus, a key question raised by the Kramer Motion is whether plaintiff's use of the domain name "AttorneyGrievance.com" is misleading.

An inquiry into whether the domain name is misleading would be helped by the submission of evidence, including evidence showing that members of the public have (or have not) been misled into believing that the website is affiliated with the Attorney Grievance Commission. *Cf. Syndicated Publications, Inc. v. Montgomery Cnty., Md.*, 921 F. Supp. 1442, 1451 (D. Md. 1996) (finding that solicitations were misleading because, *inter alia*, recipients had filed complaints with the local office of consumer affairs expressing their confusion). Accordingly, I will deny the Kramer Motion, without prejudice to its renewal after the parties conduct discovery.

## CONCLUSION

For the foregoing reasons, the Bar Motion will be granted in part and denied in part. The Kramer Motion will be denied as premature, without prejudice. A separate Order follows, consistent with this Memorandum Opinion.


Date: March 10, 2014                          _____/s/_____
                                              Ellen Lipton Hollander
                                              United States District Judge